UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                      :

CATHLEEN APICELLA,                       :

                             :      <u>MEMORANDUM AND ORDER</u>

              Plaintiff,         :

                             :        10-cv-1679 (WFK)

           -against-          :

RITE AID HDQTRS. CORP. d/b/a/ RITE AID CORP.,  :

                             :

             Defendant.        :

                             :
-----------------------------------------------------------------------X

**WILLIAM F. KUNTZ II, United States District Judge**

       Cathleen Apicella ("Plaintiff") brings this action against her employer, Rite Aid

Headquarters Corp. ("Defendant"), for alleged violations of Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. § 2000e, the Equal Pay Act, 29 U.S.C. § 206, and New York State

Human Rights Law ("NYSHRL"), N.Y. Executive Law § 296.  Plaintiff asserts Defendant

discriminated against her when it demoted her from the position of supervising pharmacist to

staff pharmacist, cut hours, and placed her in a "floater" pool.  Defendant moves for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons

stated below, the Court denies Defendant's motion in its entirety.

**I.    <u>Background</u>**

       Plaintiff was hired as a staff pharmacist by one of Defendant's corporate predecessors in

1984, and was promoted to the position of supervising pharmacist about eight or nine months

later.  Pl.'s Local Rule 56.1 Counterstatement of Undisputed Facts ("Pl.'s 56.1 St."), ¶ 1;

Deposition of Cathleen Apicella ("Pl.'s Dep. Tr."), at 42:2–18, 51:18–52:11, 60:14–22.  She

continued to work as a supervising pharmacist with Defendant's corporate predecessors until January 2005, when she went on medical leave. Pl.'s 56.1 St., at ¶ 1; Pl.'s Dep. Tr. at 69:8–11. During the approximately twenty years Plaintiff worked for Defendant's predecessors, she never received any negative work evaluations or warnings. Pl.'s Dep. Tr. at 48:21–49:16.

Plaintiff returned from her medical leave in February 2006, at which time she was given the position of supervisory pharmacist at Defendant's store[1] in Shirley, New York. Pl.'s 56.1 St., at ¶¶ 2, 4; Pl.'s Dep. Tr. at 110:13–19, 125:16–24. According to Plaintiff's testimony, this position was permanent. Pl.'s 56.1 St., at ¶ 4; Pl.'s Dep. Tr. at 152:14–153:22. Defendant, by contrast, contends that Plaintiff was offered the position on a temporary basis only. Aff. of Frank Peterson ("Peterson Aff."), at ¶¶ 3–4.

*The 2006 Incident*

About six months after Plaintiff's return from medical leave, Defendant informed Plaintiff that a new supervising pharmacist, Robert Lupski, had been hired for Defendant's Shirley store. Pl.'s 56.1 St., at ¶¶ 2, 4. Plaintiff was offered a position as a supervising pharmacist at Defendant's store in Selden, New York. Pl.'s 56.1 St., at ¶ 4. According to Plaintiff, this new position would have required her to work regular overnight shifts. *Id.*; Pl.'s Dep. Tr. at 146:9–19, 148: 6–11. Plaintiff also contends that Frank Peterson, the district manager, suggested that the position would be better for her because he knew she "want[ed] time with [her] kids and this would be a great opportunity for [her] to spend time with them. Working at nights, [she] could be home with them during the day," or words to that effect. Pl.'s Dep. Tr. at 154:4–13.

---

[1] There is contradictory evidence in the record as to the date on which Defendant acquired the predecessor company for which Plaintiff worked. *See* Peterson Aff., at ¶ 2; Pl.'s Dep. Tr. at 44:16–18. However, because neither party argues that this fact is relevant to liability, and for ease of discussion, this Court will refer to the entity for which Plaintiff worked during 2006 as Defendant.

Defendant contends that the Selden position was not an overnight position. Peterson Aff. at ¶ 6. In any event, when Plaintiff told Defendant that she was not interested in the Selden position, Defendant demoted Plaintiff to the position of staff pharmacist. Pl.'s 56.1 St., at ¶ 4. Plaintiff accepted the demotion in order to avoid being transferred. *Id.* Plaintiff's salary remained unchanged. *Id.* at ¶ 5.

### *The 2009 Incident*

In February 2009, Defendant's District Manager, George Soulos, asked Plaintiff to reduce her hours from thirty-five to thirty per week, and to accept a new work schedule. Def.'s 56.1 St., at ¶ 6. According to Plaintiff, Mr. Soulos gave her less than twenty-four hours to accept the changed schedule. Pl.'s 56.1 St., at ¶ 6. Mr. Soulos also refused to tell Plaintiff if any of the other pharmacists at the store were being asked to reduce their hours or change their schedules. *Id.* Plaintiff complained to both Mr. Soulos and Defendant's human resources representative that she thought Mr. Soulos was discriminating against her because of her sex. Decl. of Jose G. Santiago ("Santiago Decl."), Ex. A at 1–2; Pl.'s Dep. Tr. at 204:20–206:7. Shortly after Plaintiff made these complaints, Plaintiff was transferred out of the Shirley store and into a "floater pool" of pharmacists that "fill in the gaps in the stores" as needed. Pl.'s 56.1 St., at ¶ 7; Deposition of George Soulos ("Soulos Dep. Tr."), at 41:7–24. As a floating pharmacist, Plaintiff worked in as many as three different stores each week. Pl.'s Dep. Tr. at 195:14–196:12. Defendant filled Plaintiff's former pharmacist position in the Shirley store with Marc Bashinsky. Santiago Decl., Ex. A at 2.

Defendant does not deny that Plaintiff was transferred to the "floater pool" but contends that the transfer was due to Plaintiff's refusal to agree to a change in her schedule. Def.'s 56.1

St., at ¶ 7. According to Defendant, the schedules of the other two pharmacists in the store were changed at the same time. *Id.* at ¶ 8.

During Plaintiff's first three weeks in the floater pool, Plaintiff was scheduled for less than a thirty-five hour workweek. Pl.'s Dep. Tr. at 198:18–199:5. As a result, she had to use some of her accrued vacation hours in order to maintain her benefits. *Id.* at 233:18–234:8. Plaintiff remained in the floater pool for over a year-and-a-half before she was assigned to Defendant's store in Eastport as a permanent staff pharmacist. *Id.* at 218:10–219:18; Soulos Dep. Tr. at 54:16–56:7.

Plaintiff filed this action on April 15, 2010, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, the Equal Pay Act, 29 U.S.C. § 206, and New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law § 296.[2]

**II.    Summary Judgment Standard**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks and citations omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel,*

---

[2] Plaintiff's complaint also included a claim under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101. Plaintiff withdrew this claim on March 21, 2012. *See* Docket #16.

*Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (internal editing omitted) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted).

The Second Circuit has "emphasized that trial courts must be especially chary in handing out summary judgment in discrimination cases, because in such cases the employer's intent is ordinarily at issue." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996); *see also Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 71 (2d Cir. 2000). However, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines*, 239 F.3d 456, 466 (2d Cir. 2001). Therefore, "even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

### III.   Discrimination Claims Under Federal and State Law

Courts in the Second Circuit apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to claims of discrimination under Title VII, 42 U.S.C. § 1983, and the NYSHRL. *See Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (Title VII and Section 1983); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (NYSHRL) (citation omitted). Under this framework, the plaintiff bears the initial burden of proving a *prima facie* case

of unlawful discrimination by demonstrating: (1) "membership in a protected class;" (2) "qualification for the position;" (3) "adverse employment action;" and (4) "circumstances giving rise to an inference of discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). "Although the burden of establishing a prima facie case is not onerous, and has been frequently described as minimal, the Second Circuit has also noted that a jury cannot infer discrimination from thin air." *Stafford v. N.Y. Presbyterian Hosp.*, No. 06-cv-2150, 2011 WL 1131104, at *5 (E.D.N.Y. Mar. 28, 2011) (Vitaliano, J.) (internal quotation marks and citations omitted). If a plaintiff establishes a prima facie case of discrimination, the burden "then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802; *see Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "This burden is one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Once the employer satisfies this burden, "the presumption of discrimination drops out of the picture," and the plaintiff bears the burden of demonstrating "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 143 (internal quotation marks omitted).

### A. The 2006 Incident

#### 1. Plaintiff's Prima Facie Case Creates an Inference of Discrimination

Plaintiff has established a *prima facie* case of discrimination with respect to the 2006 incident, in which she alleges that she was demoted from supervisory pharmacist to staff pharmacist. Taking the facts in the light most favorable to Plaintiff, as this Court must on a motion for summary judgment, Plaintiff easily meets all four elements of a *prima facie* case: (1) as a female, plaintiff is a member of a protected class; (2) Plaintiff had twenty years of experience as a supervisory pharmacist and was qualified for her position; (3) Plaintiff was

6

demoted from supervisory pharmacist to staff pharmacist, and therefore suffered an adverse employment action; and (4) Plaintiff was replaced by a man, which is sufficient, at the *prima facie* stage, to give rise to an inference of discrimination. *See Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) ("[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage of the Title VII analysis.").

Defendant argues that Plaintiff has not established a *prima facie* case because she has admitted that Mr. Lupski, the man who replaced her as supervisory pharmacist, had more managerial experience than she did and therefore deserved to be paid more. Pl.'s Dep. Tr. 167:14–168:3. At this initial stage of the *McDonnell Douglas* analysis, however, the question is whether Plaintiff was qualified for the position from which she was demoted, *see Cruz*, 202 F.3d at 567 (2d Cir. 2000), not whether the individual who replaced her was equally or more qualified. Defendant's proffered rationale for replacing Plaintiff is more properly addressed in the second stage of the *McDonnell Douglas* analysis, and the Court will therefore consider this argument below.

Defendant also contends that Plaintiff did not suffer an adverse action because (1) her salary remained the same, and (2) she was offered a supervisory position at another store. However, it is well-established that a "plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment," even if those changes are unaccompanied by a change in salary. *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000); *Preda v. Nissho Iwai Am. Corp.*, 128 F.3d 789, 791 (2d Cir. 1997) (an adverse employment action "is not limited to 'pecuniary emoluments,' but includes discriminatorily-motivated diminution of duties"). Thus, a material adverse change may include

7

"a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Galabya*, 202 F.3d at 640 (internal editing omitted); *see also Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) ("Lesser actions such as negative employment evaluation letters may also be considered adverse."); *de la Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 21 (2d Cir. 1996) (transfer to a less prestigious assignment is an adverse employment action).

Here, it is undisputed that Plaintiff was demoted from supervisory pharmacist to staff pharmacist. Def.'s 56.1 St., at ¶ 4. This demotion resulted in a change in duties and diminution of responsibilities. Santiago Decl., Exs. B, C (job descriptions). Plaintiff has therefore met her burden to establish that she suffered an adverse action. The fact that she was offered another supervisory position does not alter this analysis since that position would have required Plaintiff to work overnight and was therefore less desirable.

### 2. Defendant Articulates a Legitimate, Nondiscriminatory Reason for Plaintiff's Demotion

Defendant may rebut Plaintiff's *prima facie* case by offering a legitimate, nondiscriminatory reason for demoting Plaintiff. *McDonnell Douglas*, 411 U.S. at 802; *see also Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 132 (2d Cir. 2012). To meet this burden, Defendant must "clearly set forth" the reasons for Plaintiff's demotion. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981); *Bucalo*, 691 F.3d at 132 (noting that, within the *McDonnell Douglas* framework, "the defendant must articulate its legitimate, nondiscriminatory reason with some specificity"). Further, at this stage, the burden on Defendant "is one of production, not persuasion; it can involve no credibility assessment." *Reeves*, 530 U.S. at 142 (internal quotation marks omitted).

8

Defendant has met its burden here by articulating a specific, nondiscriminatory rationale for demoting Plaintiff. Defendant has offered evidence that Plaintiff was assigned to the position of supervisory pharmacist on a temporary basis while Defendant sought a new, more qualified supervisory pharmacist. Peterson Aff., at ¶ 3. There is also evidence in the record that the new supervisory pharmacist who was hired, Mr. Lupski, was more qualified than Plaintiff, as he had previously served as a pharmacy district manager. *Id.* at ¶ 5. Further, once Defendant hired Mr. Lupski, Defendant was required by law to change Plaintiff's position because a pharmacy may not have more than one supervisory pharmacist. *Id.* Because Defendant has met its burden, the presumption of discrimination drops from the case, and the burden shifts back to Plaintiff to provide evidence sufficient for a reasonable jury to conclude Defendant's purported rationale was merely a pretext for sex discrimination.

### 3. Plaintiff Has Raised a Genuine Issue of Material Fact as to Whether Defendant's Proffered Reason was Pretextual

Notwithstanding the relative strengths or weaknesses of the parties' evidence in the first two phases of the *McDonnell Douglas* analysis, the Supreme Court has repeatedly made clear that "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Bucalo*, 691 F.3d at 133 (quoting *Burdine*, 450 U.S. at 254) (internal editing and quotation marks omitted). To defeat Defendant's motion for summary judgment, Plaintiff "must establish a genuine issue of material fact . . . as to whether the employer's reason for the adverse action is false *and* as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse decision." *Vazquez v. Southside United Housing Dev. Fund Corp.*, No. 06-CV-5997, 2009 WL 2596490, at *8 (E.D.N.Y. Aug. 21, 2009) (Garaufis, J.) (quoting *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1225 (2d Cir. 1994)) (emphasis in original) (internal editing omitted). Direct

evidence of discrimination is not necessary, particularly because "proof is seldom available with respect to an employer's mental processes." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000). Therefore, "[s]ummary judgment is appropriate at this stage only if the employer's nondiscriminatory reason is dispositive and forecloses any issue of material fact." *Id.* As discussed below, summary judgment is not appropriate on the record before this Court.

Plaintiff argues that her supervisor's remark that he knew she wanted time with her kids and the proposed transfer to another store would be a great opportunity for her to spend time with them is circumstantial proof that the decision to remove her from the position in Defendant's Shirley store was motivated by discriminatory animus. It is true that stereotyped remarks about a woman's role in the family, and how that interacts with her work, may constitute evidence of discriminatory intent. *See, e.g., Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 119 (2d Cir. 2004) (citing *Price Waterhouse*, 490 U.S. 228, 251 (1989)). Moreover, such stereotyped comments may, without more, be sufficient to survive a summary judgment motion. *Id.* at 122.

Nonetheless, in most sex discrimination cases where summary judgment is denied, the plaintiff alleges numerous instances of discriminatory actions or comments that tend to demonstrate pretext. *See id.* In most cases where summary judgment is granted, the plaintiff alleges only isolated, non-probative comments or actions that are remote from the adverse employment action and which would not allow a rational jury to find discrimination. *See, e.g., Weinstock v. Columbia Univ.*, 224 F.3d 33, 44 (2d Cir. 2000) (statements that plaintiff was "nice" and "nurturing" did not indicate gender stereotyping). In this case, Plaintiff falls in between these usual circumstances: she alleges a single, arguably sex-stereotyped comment

10

uttered around the time of her replacement by a male. Therefore, the dispositive issue is whether a rational fact finder could construe this one comment as proving intentional discrimination.

The Second Circuit has held "the more remote and oblique the [alleged discriminatory] remarks are in relation to the employer's adverse action, the less they prove the action was motivated by discrimination." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007). Conversely, "[t]he more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be." *Id*; *see also Stafford*, 2011 WL 1131104, at \*8. The Second Circuit employs a four-factor test to evaluate the probative value of a remark made by an employer: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).

Although a close call, the Court holds that Peterson's comment is sufficient to raise a genuine issue of material fact as to whether Defendant's decision was motivated by discriminatory animus and hence that its proffered non-discriminatory rationale is mere pretext. *Crump v. NBTY, Inc.*, 847 F. Supp. 2d 388, 395 (E.D.N.Y. 2012) (Kuntz, J.) (holding that evidence of a single discriminatory remark is sufficient to survive a motion for summary judgment under Title VII where it meets *Henry*'s four-factor test). First, the comment was made by the district manager, who had authority to determine staffing decisions.[3] Second, the remark

---

[3] Defendant contends that Terri To, the pharmacy district manager, had the ultimate responsibility for the hiring and staffing of pharmacists and therefore for changing Plaintiff's position. Reply Mem. to Def.'s Mot. for Summ. J., at ¶ 11. Plaintiff agrees that Terri To was also at the meeting, but alleges that the decision was a joint one between Ms. To and Mr. Peterson. Pl.'s Dep. at 155:3-6. The Court notes that

was made during the meeting in which Plaintiff was told that she either had to transfer to an overnight position or accept a demotion, and thus was made contemporaneously with the adverse employment action. Third, a reasonable jury could find that the comment about whether the offered position would better accommodate Plaintiff's family responsibilities demonstrated gender-stereotyping. Finally, the comment was made during the meeting in which the adverse employment decision was made as part of Defendant's attempt to convince Plaintiff to accept a different, but less desirable, position.

After a careful analysis using the standards set forth by the Supreme Court and the Second Circuit, this Court finds that a rational fact finder could conclude that Plaintiff's termination arose from Defendant's intentional discrimination. Drawing all inferences in favor of the non-moving party, Plaintiff has both met the minimal burden of establishing a *prima facie* case and produced evidence sufficient for a rational finder of fact to conclude that she was demoted because of sex discrimination. Therefore, summary judgment for Defendant is denied.

**B. The 2009 Incident**

For similar reasons to those illustrated *supra*, this Court also holds that Plaintiff has produced evidence sufficient for a rational finder of fact to conclude that she was transferred into the floater pool because of sex discrimination. As with the 2006 incident, it is indisputable that Plaintiff has established a *prima facie* case of discrimination: (1) as a female, plaintiff is a member of a protected class; (2) Plaintiff had twenty years of experience as a supervisory pharmacist and was qualified for her position; (3) Plaintiff was transferred from a permanent staff pharmacist position to a floater position that required her to work in more than one store,

---

neither party has offered any employment records that might resolve this disputed issue of fact. As a result, on this motion for summary judgment, the Court is constrained to accept Plaintiff's version of the facts as true. *Brod*, 653 F.3d at 164.

which transfer constitutes an adverse employment action; and (4) Plaintiff was replaced by a man. *See Zimmerman*, 251 F.3d at 381.

Defendant has also articulated a legitimate, nondiscriminatory reason for Plaintiff's transfer into the floater pool. *See McDonnell Douglas*, 411 U.S. at 802; *Bucalo*, 691 F.3d at 132. According to evidence in the record, Defendant's store in Shirley had been losing business and Defendant therefore made a decision to change its pharmacists' hours to reduce employee overlap and expenses. Def.'s 56.1 St., at ¶ 6; Santiago Decl., Ex. A at 1; Soulos Dep. Tr. at 25:8–22. In addition, the supervising pharmacist, who was male, had already been asked to change, and in fact had agreed to change, his schedule. Def.'s 56.1 St., at ¶ 8; Soulos Dep. Tr. at 27:6–21. By contrast, Defendant contends that Plaintiff refused to change her schedule, and Defendant was therefore obliged to transfer her into the floater pool so that it could proceed with necessary scheduling changes in the Shirley store. Def.'s 56.1 St., at ¶ 7.

Nonetheless, Plaintiff has raised a genuine issue of material fact as to whether Defendant's proffered rationale for transferring her into the floater pool was pretextual. The evidence in the record shows that Plaintiff was afforded less than twenty-four hours to make a decision about the scheduling changes. Pl.'s 56.1 St., at ¶ 6; Santiago Decl., Ex. A at 1–2 (email by Mr. Soulos stating that he spoke with Plaintiff on Wednesday about the proposed scheduling change and asked her to make a decision by Thursday). Moreover, just two business days later, Mr. Soulos wrote an email to Defendant's human resources department proposing to transfer Plaintiff because she had refused the new schedule and because it would allow him "to place Marc Bashinsky in the store." Santiago Decl., Ex. A at 2. A later email similarly stated that Mr. Soulos had been "in the process of making changes in the [Shirley] store" and to that end he had "hired the supervising pharmacist from a former independent [store] . . . to place him here [in the

13

Shirley store] to help build business." *Id.* Taking the facts in the light most favorable to Plaintiff and drawing all inferences in her favor, as this Court must, the nearly contemporaneous (and possibly anterior) decision to hire a male to replace Plaintiff raises an inference that Defendant used the scheduling changes as cover to mask a discriminatory intent.

**IV.   Retaliation and Equal Pay Claims**

Although Defendant asks this Court to dismiss Plaintiff's claims in their entirety, Defendant has not provided any argument as to why Plaintiff's Equal Pay claim should fail, and did not address the substance of Plaintiff's retaliation claims until its reply brief.  As a result, the Court declines to dismiss these claims.

**V.   Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is denied in its entirety.


**SO ORDERED**

Dated: Brooklyn, New York
       March 27, 2013

                                        s/WFK

                                        _____
                                        HON. WILLIAM F. KUNTZ, II
                                        United States District Judge

14